**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NECA-IBEW PENSION FUND,                      Case No. 1:11-cv-451
   Derivatively on Behalf of
CINCINNATI BELL, INC.,                       Judge Timothy S. Black
   Plaintiff,

vs.

PHILLIP R. COX, *et al.*,
   Defendants.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This civil lawsuit presents the question, among others, whether a shareholder of a

public company may sue its directors for breach of the duty of loyalty when the directors

grant $4 million dollars in bonuses, on top of $4.5 million dollars in salary and other

compensation, to the chief executive officer in the same year the company incurs a $61.3

million dollar decline in net income, a drop in earnings per share from $0.37 to $0.09, a

reduction in share price from $3.45 to $2.80, and a negative 18.8% annual shareholder

return.

Normally, a board of directors is protected by the "business judgment rule" when

making decisions about executive compensation, and courts "will not inquire into the

wisdom of actions taken by a director in the absence of fraud, bad faith, or abuse of

discretion." *Radol v. Thomas*, 772 F.2d 244, 257 (6th Cir. 1987).  However, the business

judgment rule is a presumption that may be rebutted by a plaintiff with factual evidence

that board members acted disloyally, *i.e.*, not in the best interests of the company or its

shareholders. *See, e.g., Koos v. Cent. Ohio Cellular, Inc.*, 641 N.E.2d 265, 272 (Ohio Ct.

App. 1994).

Under the recently enacted federal law, The Dodd-Frank Wall Street Reform Act,
publicly traded companies must include a separate shareholder resolution to approve
executive compensation in their proxies at least once every three years. *See* 15 U.S. Code
§78n-1(a) (2010).  Pursuant to that requirement, the Cincinnati Bell Board included a
shareholder resolution in its March 21, 2011 proxy seeking shareholder approval of the
2010 executive compensation.  The Board recommended that the shareholders vote in
support of the resolution.  On May 3, 2011, 66% of voting shareholders voted against the
2010 executive compensation.[1]

---

[1] Some "commentators are now identifying excessive executive compensation as the
No. 1 problem in corporate governance .... While private sector wages rose only 2% in 2010 ...,
the median compensation for chief executive officers at Standard & Poor's 500 index companies
was up by 18% from 2009 to an average of $12 million. ... In 1965, the typical chief executive
made 24 times the salary of the average worker. [Today], the typical chief executive makes 275
times the salary of the average worker. ... The top 1% of earners now take in about a quarter of our
nation's income and own 40% of its wealth ...."  Morrissey, Daniel J. "Courts Should Curb
Executive Pay" *The National Law Journal* (Aug. 15, 2011). (*See* Ex. 2 to plaintiff's memo contra;
Doc. 24).

Against this backdrop, Congress passed the Dodd-Frank Wall Street Reform Act and
included within it the "say-on-pay" provision which requires public companies to allow their
shareholders an advisory vote on the compensation of their top officials.  Although Dodd-Frank
states that those expressions are not binding and do not alter the fiduciary duties of directors,
some commentators opine that "[a] negative say-on-pay vote gives the court evidence that there's
been a breach of duty.  It doesn't mean there's been a breach of duty, but it can support a finding
of breach."  Myles, Danielle "Experts Disagree on Validity of Say-on-Pay Lawsuits"
*International Financial Law Review* (Aug. 2011). (*See* Ex. 1 to plaintiff's memo contra; Doc. 24)

Critics of Dodd-Frank's "say-on-pay" provisions worry that extensive, frivolous litigation
will ensue, but a report issued by Shulte Roth & Zabel on the 2011 annual meeting season shows
that only 1.6% of public companies which have held their annual meetings as of the end of June
2011 received negative shareholder recommendations.  (*See* Ex. 1 to plaintiff's memo contra;
Doc. 24).  Cincinnati Bell is one of those companies.

Citing, *inter alia*, the overwhelming rejection by shareholders of 2010 executive compensation, plaintiff filed this lawsuit alleging that the Cincinnati Bell Board breached its fiduciary duty of loyalty when it decided to approve large pay raises and bonuses to its top three officers in a year when, according to plaintiff, the company performed dismally. The directors and officers, in turn, have filed their motion to dismiss the lawsuit.

### A.  Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint.  Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P 12(b)(6).  The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

-3-

After assuming the veracity of all well-pleaded factual allegations (which assumption obviously will not apply at summary judgment or trial), the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949, 1950 (citing *Twombly*, 550 U.S. at 556, 570). A claim is facially plausible when the plaintiff "pleads factual content that allows . . . the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556).

**B.      The Business Judgement Rule Does Not Require Dismissal Because Plaintiff Adequately Pleads a Claim for Breach of Fiduciary Duty.**

Directors owe two separate fiduciary duties to the corporation: the duty of loyalty and the duty of care. *Radol,* 772 F.2d at 256. The duty of loyalty requires that directors perform their duties "in good faith, in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation." Ohio Rev. Code Ann. §1701. 59(B) (2011). Plaintiff alleges that Cincinnati Bell's directors breached their duty of loyalty when they approved the 2010 executive compensation.

Ohio courts follow "the business judgment rule" and "will not inquire into the wisdom of actions taken by a director in the absence of fraud, bad faith, or abuse of discretion." *Radol*, 772 F.2d at 257. Under Ohio law, directors will face liability only if it is shown by clear and convincing evidence that their actions were undertaken with "a deliberate intent to cause injury to the corporation" or "reckless disregard for the best interests of the corporation." Ohio Rev. Code Ann. §1701.59(D) (2011).

Informed decisions on compensation rendered by disinterested directors are presumed to be the product of a valid business judgment. *Prod. Res. Group LLC v. NCT Group, Inc.*, 863 A.2d 772, 779 (Del. Ch. 2004). Plaintiff bears the burden to establish facts rebutting the business judgment rule's presumption of good faith of directors. *Radol*, 772 F.2d at 257; *Koos*, 641 N.E.2d at 273.

However, "the business judgment rule imposes a burden of proof, not a burden of pleading." *In re Nat'l Century Fin. Enters., Indiv. Litig.*, 504 F.Supp.2d 287, 312 (S.D. Ohio 2007); *Marsalis v. Wilson*, 778 N.E.2d 612, 616 (Ohio Ct. App. 2002). When plaintiffs allege a breach of fiduciary duty, "the business judgment rule would impose on plaintiffs a burden at trial to present evidence to rebut the presumption the rule imposes. However, plaintiffs are not likewise obligated to plead operative facts in their complaint that would rebut the presumption." *Marsalis*, 778 N.E.2d at 616. While the Court applies federal law on matters of procedure, the federal rule is much the same, holding that while a plaintiff must plead an exception to the business judgment rule, he is "not required to plead the exception with particularity." *In re Tower Air, Inc.*, 416 F.3d 229, 236 (3d Cir. 2005).

Here, plaintiff has made adequate pleadings that "the Cincinnati Bell Board is not entitled to business judgment protection for its 2010 executive pay hikes." (Doc. 1 at ¶ 4).

The complaint provides factual allegations and not simply conclusory allegations.[2]  These factual allegations raise a plausible claim that the multi-million dollar bonuses approved by the directors in a time of the company's declining financial performance violated Cincinnati Bell's pay-for-performance compensation policy[3] and were not in the best interests of Cincinnati Bell's shareholders[4] and therefore constituted an abuse of discretion and/or bad faith.

--------

[2]  The Directors awarded CEO Cassidy an annual performance bonus of $1,335,840, a special bonus of $600,160, and a retention bonus of $2,100,000, bringing his total compensation to over $8.5 million, representing a 71.7% increase in his prior total yearly compensation. (Doc. 1 at ¶¶ 11-13; 30-31; Doc. 3 at 11-12). CFO Wojtaszek received an annual incentive award of $282,762, a special bonus of $531,300, and a long-term incentive award of $552,174, bringing his total compensation to over $2 million and constituting an 80.3% increase over his prior compensation. (*Id.*) Vice President and General Counsel Wilson was awarded an annual incentive award of $282,762 and a long-term incentive award of $538,486, bringing his total compensation to over $1.5 million and constituting a 54.3% increase over his prior yearly compensation. (*Id.*) All of the compensation awards were approved by the full Board. (Doc. 3 at 11-12). The awarding of these bonuses occurred in a year when the company incurred a $61.3 million dollar decline in net income, a drop in earnings per share from $0.37 to $0.09, a reduction in share price from $3.45 to $2.80, and a negative 18.8% annual shareholder return. (Doc. 1 at ¶ 28). The company's 2010 net income applicable to common shareholders and total shareholders' equity also materially declined. (*Id.*)

[3]  Plaintiff alleges that the compensation violated Cincinnati Bell's written compensation policy, which states that "a significant portion of the total compensation for each of our executives is directly related to the Company's earnings and revenues and other performance factors" and that at-risk compensation should be "tied to the achievement of specific short-term and long-term performance objectives, principally the Company's earnings, cash flow, and the performance of the Company's common shares, thereby linking executive compensation with the returns realized by shareholders." (Doc. 1 at ¶ 27) (emphasis supplied).

[4]  Plaintiff asserts that the negative shareholder advisory vote on executive compensation, in which 66% of voting shareholders voted against the 2010 executive compensation, provides "direct and probative evidence that the 2010 executive compensation was not in the best interests of the Cincinnati Bell shareholders." (Doc. 1 at ¶ 36).

Defendants may offer the affirmative defense of the business judgment rule at trial, where plaintiff may well not be able to prove by clear and convincing evidence that the directors acted with "a deliberate intent to cause injury to the corporation" or "reckless disregard for the best interests of the corporation." But that all is for trial, or summary judgment – it is not fodder for dismissal. Plaintiff states a claim; no dismissal is warranted.

### C. Plaintiff is excused from the requirement of pre-suit demand as futile.

The directors ask the Court to dismiss this lawsuit because the plaintiff did not first make demand upon the directors to sue themselves. (Doc. 3 at 13).

Under Rule 23.1 of the Federal Rules of Civil Procedure, the plaintiff in a shareholder derivative action must either make a pre-suit demand on the Board of Directors for the desired action or "state with particularity" the reasons for failing to make such a demand. Fed. R. Civ. P. 23.1(b)(3). Even when derivative claims are brought under federal law, the substantive law of the state of incorporation is applied to determine whether plaintiff's failure to make a demand is excused. *In re Ferro Corp.*, 511 F.3d 611, 617 (6th Cir. 2008); *see also Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90, 108-109 (1991). Here, the state of incorporation is Ohio.

Like the federal rules, Ohio's Rules of Civil Procedure contain a requirement that the complaint "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors and, if necessary, from the shareholders and the reasons for his failure to obtain the action or for not making the effort." Ohio Civ. R.

-7-

23.1. Nevertheless, Ohio law permits a shareholder to proceed with a derivative suit without first making a demand if the shareholder can demonstrate that the demand would have been futile. *Carlson v. Rabkin*, 789 N.E.2d 1122, 1128 (Ohio Ct. App. 2003).

To demonstrate futility, plaintiffs bear the burden of showing that "the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed." *Carlson,* 789 N.E.2d at 1128. Plaintiff must "*point to facts* which show that the presumed ability of the directors to make unbiased, independent business judgements about whether it would be in the corporation's best interests to file the action does not exist in this case." *Ferro*, 511 F. 3d at 618.

Ohio law "presumes" that directors can exercise their independent business judgment about whether it would be in the best interests of the corporation to sue some or all of the other directors, and Ohio courts "have consistently rejected the idea that demand is always futile when the directors are targeted as the wrongdoers of the suit the shareholders wish the corporation to bring." *Ferro*, 511 F.3d at 618 (citing *Drage v. Procter & Gamble*, 694 N.E.2d 479, 483 (Ohio Ct. App. 1997).

However, demand is presumptively futile "where the directors are antagonistic, adversely interested, or involved in the transactions attacked." *Ferro*, 511 F.3d at 618 (citing *Bonacci v. Ohio Highway Express, Inc.*, No. 60825, 119 WL 181682 at *4). Moreover, under Delaware law, pre-suit demand is excused when plaintiff's allegations create a reasonable doubt that the challenged transaction is the result of a valid business judgment. *McCall v. Scott,* 239 F.3d 808, 816 (6th Cir. 2001); *Drage* 694 N.E.2d at 486.

Here, plaintiff has pled specific facts to give reason to doubt that the directors

could make unbiased, independent business judgments about whether to sue.  The director

defendants are the very same people who approved the pay hikes and bonuses, and

plaintiff has named all directors who approved the compensation as defendants.[5]

Moreover, in this case, the directors did not merely approve the transaction, they also

recommended to the shareholders that the shareholders approve the compensation.  Given

that the director defendants devised the challenged compensation, approved the

compensation, recommended shareholder approval of the compensation, and suffered a

negative shareholder vote on the compensation, plaintiff has demonstrated sufficient facts

to show that there is reason to doubt these same directors could exercise their independent

business judgment over whether to bring suit against themselves for breach of fiduciary

duty in awarding the challenged compensation.  The Court concludes, at the dismissal

stage, that plaintiff's allegations create a reasonable doubt that the challenged transaction

is the result of a valid business judgment, and, accordingly, the directors possess a

disqualifying interest sufficient to render pre-suit demand futile and hence unnecessary.

---

[5] Two Ohio Court of Appeals cases have held that suing all of the directors may establish demand futility. *Carlson,* 789 N.E.2d at 1128 ("Examples of when demand would be excused as futile include when all directors are named as wrongdoers and defendants in a suit"); *Drage,* 694 N.E.2d at 483 ("when *all* directors are named as wrongdoers/defendants in a suit, futility may exist.") (emphasis in original).  Here, plaintiff has sued all members of the board who devised and approved the challenged compensation.  While there is one member of the Cincinnati Bell Board, Alan Schriber, who is not a party to this litigation because he joined the Board after the approval of the 2010 executive compensation, "the issue is whether the particularized factual allegations are sufficient to create doubt about the disinterestedness and independence of a majority of the directors."  *McCall,* 239 F.3d at 818, n.10.  Because plaintiff has established that demand would have been futile as to seven of the eight members of the Board, Mr. Schriber's independence does not preclude a finding of futility.

**D. Plaintiff states a claim for unjust enrichment.**

Plaintiff has also alleged that defendants Cassidy, Wojtaszek, and Wilson were unjustly enriched as a result of the 2010 executive compensation.

Under Ohio law, a party to an express contract may not bring a claim for unjust enrichment absent fraud, illegality, or bad faith. *Donald Harris Law Firm v. Dwight-Killian*, 853 N.E.2d 364, 367 (Ohio. Ct. App. 2006). Defendants contend that plaintiff's claim fails as a matter of law because Cassidy, Wojtaszek, and Wilson were employed under contract. However, a contract that merely provides an executive with the opportunity to earn incentive bonuses does not bar consideration of a claim for unjust enrichment. *Scrushy v. Tucker*, 955 So.2d 988, 1009 (Ala. 2006). Whether incentive bonuses, or simply opportunities for incentive bonuses, are covered by the defendants' employment contracts requires a factual determination not yet before the Court.

Defendants also assert that even if the claim is not barred as a matter of law, plaintiff has failed to plead sufficient facts to establish a claim for unjust enrichment. Under Ohio law, a claim for unjust enrichment requires (1) a benefit conferred upon the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by defendant in under circumstances where it would be inequitable for defendant to do so without compensation. *DavCo Acquisition Holding, Inc. v. Wendy's Intern, Inc.*, 2008 WL 755283, 11 (S.D. Ohio 2008). To satisfy the third element, the plaintiff must show not only that the defendant was enriched, but also that plaintiff has a superior equity so that it would be unconscionable for defendant to retain the benefit. *Id*.

-10-

Under defendants' view, because the executives "rendered services" to Cincinnati Bell, plaintiff cannot demonstrate that they improperly retained their compensation. (Doc. 3 at 23). Defendants' argument is unpersuasive in light of the case law. Restitution is an equitable remedy, serving "to deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits honestly in the first instance." *Schock v. Nash*, 732 A.2d 217, 232-233 (Del. 1999). Courts have repeatedly upheld claims of unjust enrichment despite defendants rendering services as employees, and "the remedy of restitution may be invoked regardless of whether or not the party retaining the benefit is found to be a wrongdoer." *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1063 (Del. 1988). *See also*, *Scrushy*, 955 So.2d at 1012 (upholding a claim of unjust enrichment despite the defendant's service as CEO); *In re Zoran Corp. Deriv. Litig.*, 511 F.Supp.2d 986 (N.D. Cal., 2007) (upholding a claim of unjust enrichment despite defendants service as executives).

Here, plaintiff alleges that defendants were unjustly enriched as the result of the Board's breach of fiduciary duty. At this stage of the pleadings, the Court concludes that because plaintiff has sufficiently pled facts of breach of fiduciary duty, it is "axiomatic" that plaintiff has also sufficiently pled a claim for unjust enrichment. *Jackson Nat'l. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 394 (Del. Ch. 1999).

## Conclusion

Accordingly, defendants' motion to dismiss (Doc. 3) is **DENIED**.

**IT IS SO ORDERED**.

Date:  September 20, 2011

Timothy S. Black
United States District Judge