UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **NECA-IBEW PENSION FUND (THE DECATUR PLAN), Derivatively on Behalf of Cincinnati Bell Inc.,** | : : : : | Case No. 1:11 CV 00451 |
| Plaintiff, | : : | Judge Black |
| | : | Magistrate Judge Wehrman |
| v. | : : | |
| | : | **MEMORANDUM OF INDIVIDUAL** |
| | : | **DEFENDANTS IN OPPOSITION TO** |
| | : | **PLAINTIFFS' MOTION FOR LEAVE TO** |
| | : | **FILE AMENDED COMPLAINT AND** |
| | : | **DISMISS DEFENDANT WENTWORTH** |
| | : | |
| **PHILLIP R. COX, et al.,** | : : | |
| Defendants. | : | |

Defendants Phillip R. Cox, Bruce L. Byrnes, Jakki L. Haussler, Craig F. Maier, Alex Shumate, Lynn A. Wentworth, John M. Zrno, John F. Cassidy, Gary J. Wojtaszek, and Christopher J. Wilson (hereinafter "Individual Defendants") oppose Plaintiffs' Motion for Leave to File Amended Complaint and Dismiss Defendant Wentworth ("Plaintiffs' Motion"), for the reasons set forth in this Memorandum.

**I.     FACTS AND PROCEDURAL POSTURE**

Plaintiff NECA-IBEW Pension Fund (The Decatur Plain) ("NECA") filed this action derivatively on behalf of Cincinnati Bell Inc. ("Cincinnati Bell" or "the Company") on July 5, 2011. (Complaint, Dkt. 1).[1] NECA sued the entire Board of Directors of Cincinnati Bell and certain officers of the Company, seeking relief from the Individual Defendants and claiming that the individual members of the Board acted disloyally, irrationally, and unreasonably in connection with their decision to increase the pay of certain executive officers in 2010.

---

[1] The Complaint was verified by Robert L. Williams, as Administrator of NECA.

(Complaint, par. 1, 3; Dkt. 1).  The Complaint named as individual defendants each of the members of the Board as it existed in 2010, including Defendant Lynn Wentworth.  The Complaint seeks damages, declaratory, equitable and injunctive relief, and an order for the implementation and administration of internal controls and systems designed to prohibit and prevent the payment of excessive compensation to the Company's CEO and/or top executives. (Complaint, Prayer for Relief, Dkt. 1).

It is now clear that when Plaintiff filed its Complaint, the Court did not have subject matter jurisdiction.  NECA is a trust and at least one of its trustees is a citizen of Georgia; Defendant Wentworth is also a citizen of Georgia.  In an attempt to correct this jurisdictional defect, NECA attempted to voluntarily dismiss Defendant Wentworth and file an amended complaint. (Plaintiffs' Motion, pg. 2).  The Individual Defendants moved to strike the voluntary dismissal and amended complaint, which motion was granted by the Court.  (Order, Dkt. 64).  In that Order, the Court stated that any motion (seeking leave to file an amended complaint and voluntarily dismissing Defendant Wentworth) should fully brief the issue of whether Defendant Wentworth is an indispensible party.

## II.     ARGUMENT

When a party attempts to evade the complete-diversity rule by failing to name persons or entities that have an interest in the litigation or otherwise should be named, Fed. R. Civ. P. 19 is called into play.  Glancy v. Taubman Centers, Inc., 373 F.3d 656, 664 (6th Cir. 2004) (hereinafter "Glancy").  Fed. R. Civ. P. addresses this problem by providing guidance for the joinder of persons needed for just adjudication.  It establishes guidelines for determining when it is proper to dismiss a case because a person or entity has an interest in the outcome of the litigation that could be impaired in the absence of that person or entity, but joinder of the person or entity will deprive the court of subject matter jurisdiction.  Id.

Addressing whether joinder is proper under Rule 19 is a three-step process. First, the court must determine whether the person is a necessary party under Rule 19(a). Second, if the person is a necessary party, the court must then decide if joinder of that person will deprive the court of subject matter jurisdiction. Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should "in equity and good conscience" dismiss the case because the absentee is indispensible. Glancy, at 666. A district court's finding that a party is necessary under Rule 19(a) is reviewed for abuse of discretion; a determination that a party is indispensible under Rule 19(b) is reviewed de novo. Hopper v. Wolfe, 396 F.3d 744, 747, 748, fn. 3 (6th Cir. 2005) (hereinafter "Hopper").

Under Rule 19(a), a party is necessary if either: (1) complete relief in the dispute cannot be obtained without the absent party or (2) the absent party claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (a) as a practical matter impair or impede the person's ability to protect the interest; or (b) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Hopper at 748. In a diversity case such as this, the question of whether a party is necessary or indispensible is a question of federal law. Hopper, at 749, fn. 4. State law provides guidance in determining whether the parties have an interest in the litigation, as defined by Rule 19, but state law is not determinative of the question of whether a party is necessary or indispensible for purposes of Rule 19. Id.

Defendant Wentworth has a significant interest in the subject of this action. She has been a director of Cincinnati Bell since 2008 and in 2010 served as Chairman of the Board's Audit

and Finance Committee. (Complaint, par. 19, Dkt. 1).[2] Defendant Wentworth is an audit committee financial expert as defined in the regulations of the SEC, and she was specifically recruited to join the Company's Audit and Finance Committee with the understanding that she would assume leadership of the Committee upon the retirement of its then current Chairman. (Cincinnati Bell 2011 Proxy Statement, pg. 18, Dkt. 3, Exhibit A).

NECA alleges that Defendant Wentworth approved "massive pay increases for Cincinnati Bell's CEO and top executives in 2010," in contravention of the best interests of the Company's shareholders and in violation of the Company's executive compensation policies. (Complaint, par. 19; Dkt. 1). NECA alleges that Defendant Wentworth's decision approving the pay increases was not to award superior performance but rather was "corporate favoritism designed to unjustly enrich Cincinnati Bell's CEO and top executives at the expense of the Company." Id. NECA alleges that, because of her executive position and/or access to Cincinnati Bell's internal information, Defendant Wentworth knew or should have known that the pay increases were unreasonably excessive and violated the Company's executive compensation policy. (Complaint, par. 23, Dkt. 1). NECA alleges that the 2010 pay "hikes" were irrational and unreasonable and not the product of a valid business judgment; rather, the members of the Company's Board—including Defendant Wentworth—intended to serve the interests of the Company's CEO and top executives at the expense of the Company and its shareholders. (Complaint, par. 23).

---

[2] The purpose of the Audit and Finance Committee is, among other things, to assist the Board in its oversight of (i) the financial integrity of the financial statements of the Company; (ii) the Company's compliance with legal and regulatory requirements; (iii) the independence and qualifications of the Independent Registered Public Accounting Firm; (iv) the Company's risk assessment and risk management policies; and (v) the performance of the Company's internal audit function and Independent Registered Accounting Firm. (Cincinnati Bell 2011 Proxy Statement, pg. 8, Dkt. 3, Exhibit A).

NECA alleges that Defendant Wentworth breached her duty of loyalty owed to the Company and its shareholders and, in doing so, damaged and injured the Company and its shareholders. (Complaint, par. 50, Dkt. 1). NECA seeks damages against Defendant Wentworth, as well as a declaration from the Court that the result of the advisory say-on-pay vote is sufficient evidence to rebut the presumption that the Board's decisions regarding the 2010 executive compensation were in the best interest of shareholders and a valid business judgment. (Complaint, Prayer for Relief, par. A and B, Dkt. 1). Moreover, NECA seeks extraordinary equitable and/or injunctive relief against Defendant Wentworth and the other defendants, including disgorgement, attachment, impoundment, imposition of a constructive trust on or otherwise restricting the disposition/exercise of improvidently awarded 2010 executive compensation. Finally, NECA seeks a judgment against Defendant Wentworth and the other defendants ordering the implementation and administration of internal controls and systems at Cincinnati Bell designed to prohibit and prevent the payment of excessive compensation to Cincinnati Bell's CEO and/or top executives. (Complaint, Prayer for Relief, par. C and D, Dkt. 1).

Ohio law concerning the liability of directors changed substantially in 1986, as a result of amendments to O.R.C. § 1701.59.[3] The 1986 amendment added Division (D) to O.R.C. § 1701.59, setting forth what must be proved in order for a director to be held liable in damages for a breach of fiduciary duty. The comments to O.R.C. § 1701.59 concerning that provision provide:

> Division (D) is new. It is designed to relieve the director of responsibility for money damages except when it is proven by clear and convincing evidence that the director has breached or failed to perform his duties and that his act or omission in doing so

---

[3] Ohio Drill & Tool Co. v. Johnson, 625 F.2d 738, 742 (6th Cir. 1980), relied upon by Plaintiffs, was decided well before the 1986 amendments to O.R.C. § 1701.59.

5

> was consciously undertaken with deliberate intent to cause injury to the corporation or with reckless disregard for the interests of the corporation.  <u>The amendment frees the director from monetary liability for negligence in any degree</u>.  The amendment does not affect other forms of relief and the directors remain liable for violations of Section 1701.95.
>
> It is believed to be important for corporations to be able to obtain and retain those persons who can best serve as directors.  It is also important that the directors of corporations feel free to use their best judgment in making business decisions that are in the best interest of the corporation and its shareholders without undue concern for personal liability.  It is also believed it is important for corporations to be able to attract and retain 'outside' (non-management) directors who are in a position to provide independent judgment.  The amendments to Sec. 1701.59 are designed to help achieve those goals. (emphasis added)

In this case, NECA has accused the Cincinnati Bell directors <u>individually</u> of wrongful and improper conduct, and seeks to hold each individually liable for damages, as well as to bind each with a declaration by this Court concerning the say-on-pay vote and other as-yet unspecified injunctive relief.  Under similar circumstances, the courts around the country have long-recognized that the directors are indispensible parties to such action.

The principle was articulated by the Ninth Circuit in <u>Castner v. First National Bank of Anchorage</u>, 278 F.2d 376, 384 (9th Cir. 1960), where the court stated:

> Directors are generally not necessary or indispensible parties to an action by or on behalf of the corporation they control.  They are of course indispensible where they themselves are charged with fraudulent or improper conduct.  (citations omitted).

<u>See, also</u>, <u>Dowd v. Front Range Mines, Inc.</u>, 242 F.Supp. 591, 597 (D. Colo. 1965) ("If a suit brought by a stockholder on behalf of himself and the other stockholders is based upon fraudulent or other wrongful acts or neglect on the part of the directors or other stockholders, they must be made parties defendant, so that they may have an opportunity to defend, and so that redress or relief may be given against them, but if no relief is sought against them they are

unnecessary.");[4] Jones v. Van Heusen Charles Co., 230 A.D. 694, 246 N.Y.S. 204 (N.Y. App. 1930) ("The corporation is interested as is the plaintiff; yet it is a necessary party defendant. The service of summons on a corporation is not service upon unnamed directors or officers, but the directors at least are necessary parties in order that an effective judgment may be had.").

In Prescott v. Plant Industries, Inc., 88 F.R.D. 257 (S.D. N.Y. 1980), insurgent shareholders of a company sought to oust existing management by electing six new directors for the nine-member board of directors. Three of the four ousted directors brought suit in New York federal court, on the basis of diversity jurisdiction. Because two of the three plaintiffs were citizens of New York, as was the nominal defendant company, plaintiffs sought leave to drop the two non-diverse plaintiffs. The defendant company opposed the move, contending that the two plaintiffs were indispensible parties, and also argued that the three members of former management who were elected to the board and who were currently serving on the board, and who were not named as defendants, were indispensible parties. The company also argued that a seventh old-management board member, who received the same number of votes as the three plaintiffs but who was not made a member of the board, was indispensible. The court agreed.

The court noted that the complaint sought a declaration that the plaintiffs were qualified to serve as directors and that the election of the three directors was in violation of the corporate by-laws and Delaware law. Plaintiffs also sought an injunction enjoining the three non-named defendants from serving as directors. The court analyzed the issue under Rule 19, noting that a purpose of the 1966 amendment was to eliminate encrusted, technical and semantic definitions of "indispensible parties," in favor of a flexible, practical analysis of who are or are not indispensible parties. The court held:

---

[4] Quoting 12 Fletcher Cyclopedia Corporations, § 5996, p. 549.

> Application of the foregoing criteria compels the conclusion that not only the two plaintiffs who seek to be 'dropped' but also the three current directors whom plaintiffs seek to enjoin from discharging their duties as directors, and also the seventh former management director who was in the tie, must be included as parties to this litigation since a judgment will affect their individual interests. *** A decree enjoining the three now serving obviously would affect their rights.  As nonparticipants, neither they nor the seventh member would be bound by a decree of this Court, and there is nothing to preclude the two plaintiffs who seek to withdraw from later commencing their own separate litigation.  Additionally, this situation clearly violates [the company's] 'interest in avoiding multiple litigation.'

In Sylvia Martin Foundation, Inc. v. Swearigen, 260 F.Supp. 231 (S.D. N.Y. 1966), plaintiff brought a shareholder derivative action on behalf of Standard, a company, against two subsidiaries and nineteen individual defendants, members of the board of directors and officers of Standard.  Plaintiff alleged the individual defendants breached their fiduciary duties by committing waste in connection with a bond offering made outside the United States.  In connection with issues relating to a lack of personal jurisdiction over the individual defendants, the court concluded that the individual directors were indispensible parties:

> 'Standard' is an indispensible party—for it is the true plaintiff to whom recovery would indirectly inure.  So too are its directors and officers, since essentially although 'Standard' is the nominal defendant, they are the alleged wrongdoers who caused the alleged unlawful acts on the part of 'Standard.'  The relief sought is an accounting on behalf of 'Standard' by these individual defendants, and an injunction restraining them.  No such relief could be decreed without in personam jurisdiction over them.

A similar result was reached in Young v. Colgate-Palmolive Company, 790 F.2d 567, 573 (7th Cir. 1986).  Plaintiff there brought a shareholder derivative action against Colgate and the members of Colgate's board of directors, alleging that the directors breached their fiduciary duty in adopting an anti-takeover plan (i.e., a "poison pill").  Plaintiff sought a declaratory judgment that the plan and its adoption were invalid and unlawful and a temporary and

8

permanent injunction against the plan's application.  The directors moved to dismiss, arguing that they were not subject to personal jurisdiction in Illinois and the suit could not proceed in their absence.  The district court agreed and dismissed the action.  The Seventh Circuit affirmed.

The Young court recited the well-established law that directors are indispensible parties where they are charged with fraudulent or improper conduct.  Young, 790 F.Supp. at 572.  The court also distinguished those cases that are essentially claims against the corporation.  Young, 790 F.Supp. at 573.  More importantly, the court focused on the nature of the remedy sought (a declaration and an injunction), stating:

> The nature of the remedy sought does not cure the lack of a substantial defendant.  To be effective, an injunction would have to run against the directors in their individual capacities to prevent them from adopting the challenged or a similar plan in the future, yet they would not be subject to the court's jurisdiction.  That a decree would bind the corporation's agents is no help, because the directors are not acting as agents in their management of the corporation, but as fiduciaries, and it is their fiduciary decisions that form the basis of the complaint.

Id.

CRTF Corporation v. Federated Department Stores, Inc., 683 F.Supp. 422 (S.D. N.Y. 1988) and Duman v. Crown Zellerbach Corporation, 107 F.R.D. 761 (N.D. Ill. 1985), cited in Plaintiffs' Motion, provide strong support that Ms. Wentworth is an indispensible party.  Both cases arose out of hostile takeovers where the subject company implemented a "poison pill" to attempt to make it more difficult for the acquirer to buy the company.  Those cases discussed and recognized the distinction between a suit alleging wrongdoing on the part of the individual directors—where such directors would be indispensible parties—and a suit against the corporation seeking corporate action which the court could order.  Duman, 107 F.R.D. at 764 ("Similarly, this court, with jurisdiction over the corporation, could effectively order redemption

of the 'poison pill' rights without joining the board of directors."); CRTF, 683 F.Supp. at 427 (citing cases where the relief sought was against the corporation and not the individual directors).

The CRTF court recognized that the directors of a company are indispensible parties where they are accused of individual wrongdoing:

> The requirement that a director be joined if individually accused of wrongdoing exists so that he or she will be able to mount a defense when the relief sought would be assessed against him or her individually, and so that the relief sought could indeed be granted against him or her should the Plaintiff prevail.[5]

Similarly, the Duman court recognized that directors are indispensible parties where they are accused of wrongdoing:

> Directors have been found indispensible parties where the complaint alleges that they themselves have committed a tort or similar wrongdoing and relief is sought from the directors personally. In such cases a real possibility of prejudice to the absent defendant may exist. Moreover, plaintiff obviously cannot get relief from directors personally unless they are parties. (citations omitted).

Duman, 107 F.R.D. at 764.

NECA named each Cincinnati Bell director who voted on the 2010 executive compensation, suing each as individual defendants, seeking damages from each director, as well as declaratory and injunctive relief against each director. This is not a case where NECA sought to sue just one or two directors—it sought to sue all of the directors involved in the 2010 executive compensation decisions. However, faced with the clear realization that it does not have diversity jurisdiction, NECA seeks to "drop" one of the defendant directors to try to preserve jurisdiction. However, NECA still seeks relief that will significantly impact Defendant

---

[5] The CRTF court cited the following cases in support of the proposition that directors are indispensible parties: Dowd v. Front Range Mines, Inc., 242 F.Supp. 591, 597 (D. Colo. 1965); Miller v. American Telephone & Telegraph Co., 394 F.Supp. 58, 65 (E.D. Pa. 1975), aff'd 530 F.2d 964 (1976); Sylvia Martin Foundation, Inc. v. Swearingen, 260 F.Supp. 231, 234 (S.D.N.Y. 1980); and Prescott v. Plant Industries, Inc., 88 F.R.D. 257, 261 (S.D.N.Y. 1980).

Wentworth in her absence.  Any judicial determination concerning the effect of the negative say-on-pay vote on the Company's 2010 executive compensation will impact Defendant Wentworth, not only with respect to the 2010 compensation issues but also with respect to her future exercise of her business judgment in matters relating to the Company.  Moreover, any injunction which orders or implements any internal controls or systems designed to prohibit or prevent the payment of excessive compensation to Cincinnati Bell executive officers—as requested by NECA—will likewise have a clear and significant impact on Defendant Wentworth, as she is the Chairman of the Board's Audit and Finance Committee, which has significant involvement in implementing and maintaining effective internal controls.

Under Rule 19(b), in determining whether the court can proceed in equity and good conscious without the necessary party, the court must balance (1) the extent to which a judgment rendered in the person's absence <u>might</u> be prejudicial to either that person or those already parties; (2) the extent to which such prejudice could be lessened or avoided through protective provisions in the judgment or other measures; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed.  Fed. R. Civ. P. 19(b); <u>Hooper</u> at 749.  The Rule 19(b) inquiry is guided by pragmatic considerations, rather than technical or formalistic legal distinctions.  <u>Hooper</u> at 749.

A judgment rendered in this case, particularly one declaring the impact or effect of the say-on-pay vote and/or one ordering the Board to implement corporate governance changes and/or one ordering the Board to implement new or different internal controls, will have a direct impact on Defendant Wentworth in her role as a Board member as well as the Chairman of the Audit and Finance Committee.  When assessing prejudice under Rule 19(b), the court must consider whether the interests of an absent party are adequately represented by those already a

11

party to the litigation.  Glacy at 672.  The Sixth Circuit has recognized that entities, such as partnerships, may under certain situations be adequately represented by its individual partners. Hooper at 750 ("The Partnership, like a marionette, cannot make a move unless some human being pulls the strings."), citing and quoting HB General Corp. v. Manchester Partners, L.P., 95 F.3d 1185 (3rd Cir. 1996).  However, the Sixth Circuit has also recognized that it would be a "troubling conclusion that a human being could be excluded from litigation because another party adequately represents his or her interests."  Id.  This is particularly true in this case, where the issues will be director-specific under Ohio law.  Under Ohio law, a director must perform his or her duties as a director in good faith and in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation.  O.R.C. § 1701.59(B).  Such considerations will be director specific.  Moreover, under Ohio law, a director is only liable in damages if it is proved by clear and convincing evidence that the director's action or failure to act was undertaken with deliberate intent to cause injury to the corporation or undertaken with reckless disregard for the best interests of the corporation.  O.R.C. § 1701.59(D).  Those considerations will likewise be director specific.  It is unrealistic to assume that any of the Individual Defendants will be able to protect the interests of Defendant Wentworth should she not be named a party defendant.

The non-monetary relief sought by NECA cannot be fashioned in such a way as to not prejudice Defendant Wentworth.  The injunctive relief sought will impact—at a minimum—how the Board members make decisions and approve compensation, thus directly and materially impacting how each director performs his or her duties.  If NECA is permitted to proceed with this action, in the absence of two Board members,[6] and if injunctive relief as requested is

---

[6] Alan R. Schreiber is a Cincinnati Bell director who is not named in this action but is named as a defendant in the state court action.

granted, different Board members will have different duties and obligations based on the relief accorded by the Court. The Court cannot fashion complete relief by issuing declaratory and/or equitable and/or injunctive relief which will apply to all Board members except Defendant Wentworth and Board member Schreiber. See, e.g., Glancy at 672 ("First, the district court could not have mitigated the prejudice to TG Partners [the absent party] of being denied the voting power of its shares except by denying the requested injunction.").

Further, it is clear that the Company—the real party in interest in this case[7]—has an adequate remedy in a forum where all defendants can be joined and, indeed, have been joined.

Finally, it is worth remembering that a shareholder such as NECA, "who brings suit on a cause of action derived from the corporation assumes a position, not technically as a trustee perhaps, but one of a fiduciary character. He sues, not for himself alone, but as representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity. And while the stockholders have chosen the corporate director or manager, they have no such election as to a plaintiff who steps forward to represent them. He is a self-chosen representative and a volunteer champion." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 549, 69 S. Ct. 1221, 1227, 93 L. Ed. 1528 (1949). To the extent that NECA is forced—because of the jurisdictional issues—to limit the claims asserted on behalf of the Company and/or the scope of the remedies sought in this suit, the case may become subject to future attack as not providing for full and complete relief, and therefore, the case should be dismissed.

## III. CONCLUSION

The Individual Defendants respectfully request that the Court deny Plaintiffs' Motion and grant Individual Defendants' motion to dismiss for lack of subject matter jurisdiction.

---

[7] Ross v. Bernhard, 396 U.S. 531, 539, 90 S.Ct. 793 (1970).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ Grant S. Cowan |
| OF COUNSEL: | Grant S. Cowan (Ohio No. 0029667) |
|  | Frost Brown Todd LLC |
| Matthew Horwitz (Ohio No. 0082381) | 3300 Great American Tower |
| Frost Brown Todd LLC | 301 East Fourth Street |
| 3300 Great American Tower | Cincinnati, Ohio  45202 |
| 301 East Fourth Street | (513) 651-6745 (direct dial) |
| Cincinnati, OH 45202 | (513) 651-6981 (facsimile) |
| (513) 651-6800 (phone) | gcowan@fbtlaw.com (e-mail) |
| (513) 651-6981 (facsimile) |  |
| ebastian@fbtlaw.com | Trial Attorney For Individual Defendants |

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2012, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ Grant S. Cowan

CINLibrary 0123153.0589716   2452106vvvv1
1/31/2012